**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------

SUSAN RUSSO, on behalf of herself and
all other persons similarly situated,

              Plaintiff,

         v.

M&S SKIN CARE LLC,

              Defendant.

--------------------------------------------------------

Docket No.

**CLASS ACTION**
**COMPLAINT &**
**DEMAND FOR**
**JURY TRIAL**

## INTRODUCTION

Plaintiff, SUSAN RUSSO, ("Plaintiff" or "Ms. Russo") on behalf of herself and all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their putative class action complaint upon Defendant, M&S SKIN CARE LLC ("M&S SKIN CARE" or "Defendant"), hereby alleges as follows:

1.     On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities. (See DOJ Letter to Congress, last accessed July 19, 2024.)

2.     Plaintiff, SUSAN RUSSO, is a legally blind resident of New York County, residing at 110 Lexington Avenue, Apt. 1F, New York, New York 10016. She has been diagnosed with Diabetic Retinopathy, a progressive retinal disease that has rendered her legally blind pursuant to

the criteria for legal blindness under New York State law. Her condition and legal blindness status are documented by Jonathan Feistmann, M.D., O.D., of N.Y.C. Retina. (See Exhibit A.)

3.      Ms. Russo is a proficient user of NonVisual Desktop Access (NVDA) screen reader software, which she relies on daily to navigate digital environments independently. Her fluency with keyboard commands and screen-reading protocols enables her to engage with complex content—including, in relevant part, online retail portals, product description pages, and e-commerce checkout tools—without assistance. NVDA's compatibility with her preferred assistive technologies is indispensable to her autonomy and digital accessibility.

4.      This action arises from Defendant M&S Skin Care LLC's failure to design, maintain, and operate its website, www.mymsskincare.com, in a manner accessible to blind and visually impaired individuals. The website functions as an interactive retail platform and a digital gateway to Defendant's handmade skin care goods, subscription services, and customer support. Defendant's failure to ensure equal access to these integrated services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5.      On March 3, March 10, and March 17, 2026, Ms. Russo visited www.mymsskincare.com using NVDA with the intent to shop for natural, handmade skin care products for herself. As a legally blind consumer, she depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require her to seek assistance from strangers—an experience she finds uncomfortable, intrusive, and difficult to navigate independently. During these visits, Ms. Russo attempted to review and purchase two specific products: the Sole Purpose Foot Butter in Raspberry & Spearmint and the Supplelicious Face Serum – Deep Hydration & Radiant Glow. Because the website lacked proper alternative text, contained unlabeled interactive elements, and failed to provide screen-reader-

compatible navigation, Ms. Russo was unable to meaningfully access the product information, select available options, or add the items to her cart, preventing her from completing the intended purchases.

6.      These barriers included missing alternative text on linked product images, missing and orphaned form labels, empty headings, broken skip links, and insufficient color contrast—each of which rendered key content unreadable or unusable to screen-reader software. Two separate WAVE accessibility audits conducted by Plaintiff's counsel of the pages for the Sole Purpose Foot Butter and Supplelicious Face Serum revealed a combined total of 28 accessibility errors, in addition to numerous contrast errors and dozens of additional alerts, across the pages Ms. Russo attempted to use. These violations contravene the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, which are widely recognized as the benchmark for digital accessibility under the ADA. Exhibit B.

7.      Defendant M&S Skin Care LLC is a limited liability company that owns and operates www.mymsskincare.com, a nationwide e-commerce platform offering handmade, all-natural, and cruelty-free skin care goods, including body butters, face serums, soaps, and body creams, to consumers across the United States, including New York. The website routinely processes online orders, subscriptions, and payments, establishing a clear nexus between its digital interface and Defendant's commercial operations.

8.      Ms. Russo specifically sought out M&S Skin Care because of its advertised reputation for handmade, all-natural, cruelty-free formulations, and because the Sole Purpose Foot Butter and Supplelicious Face Serum were marketed with specific ingredient profiles—including hyaluronic acid, aloe vera, and Pro Vitamin B5—that Ms. Russo, who must carefully manage sensitive, diabetes-affected skin, could not readily confirm were offered in comparable

form by other retailers. Ms. Russo compared M&S Skin Care's offerings to those of other skin care companies but chose to attempt her purchases from Defendant specifically because of Defendant's claimed homemade, small-batch, and eco-friendly manufacturing practices, which distinguished it from larger, mass-market skin care brands. As a blind consumer, she depends on accessible digital interfaces to make informed purchasing decisions. Defendant's failure to provide a WCAG-compliant website denied her equal access to the same services offered to sighted users. Despite marketing itself as an inclusive, customer-focused small business, Defendant has failed to implement basic accessibility features, reflecting a pattern of disregard for the rights of disabled individuals.

9.     Plaintiff seeks injunctive relief requiring Defendant to revise its digital policies and practices to ensure that its website is—and remains—fully accessible to blind and visually impaired users. Ms. Russo remains committed to maintaining a technology regimen that supports her independence and productivity. Without remediation of the barriers described herein, she will continue to be excluded from accessing Defendant's goods and services on equal terms.

10.     Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its website into compliance with federal accessibility standards.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

12.     Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant M&S SKIN CARE LLC conducts substantial and continuous business in this District through its interactive website, www.mymsskincare.com. Plaintiff accessed and attempted to use this website from her residence in New York County, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

14.     Defendant actively engages in commercial transactions with New York residents through its website. These transactions include product selection, customization, checkout, and customer support. Defendant's digital infrastructure knowingly transmits data and files into New York, establishing purposeful availment under federal precedent. See Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); Godfried v. Ford Motor Co., 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo, Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); Panarra v. HTC Corp., No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).

15.     Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum

state provide a sufficient basis for asserting personal jurisdiction over out-of-state website operators.

## NATURE OF ACTION

16.     This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

17.     The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

18.     In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

19.     Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and

NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

20.    Plaintiff, SUSAN RUSSO, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

21.    For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

"The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

22.    See also American Federation for the Blind, Screen Readers, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

23.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

24.    Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

25.    Plaintiff Susan Russo is a legally blind consumer residing in New York County, New York. She relies exclusively on NonVisual Desktop Access ("NVDA") screen-reader software to navigate digital content and complete online transactions independently. Ms. Russo's legal blindness, resulting from Diabetic Retinopathy, is documented by Jonathan Feistmann, M.D., O.D. of N.Y.C. Retina, who examined Ms. Russo and confirmed that her visual acuity in her better eye, even with best correction, meets the criteria for legal blindness under New York State law. (See Exhibit A.)

26.    On March 3, March 10, and March 17, 2026, Ms. Russo visited www.mymsskincare.com using NVDA with the intent to purchase natural, handmade skin care products for her own personal use. She specifically sought to buy the Sole Purpose Foot Butter in Raspberry & Spearmint and the Supplelicious Face Serum – Deep Hydration & Radiant Glow. Ms. Russo selected M&S Skin Care over other skin care retailers because of the company's advertised homemade, small-batch formulation process, its claimed use of all-natural and organic ingredients, and its cruelty-free manufacturing practices, all of which the company prominently markets as distinguishing features on its product pages. As a blind consumer, Ms. Russo relies on accessible online shopping to avoid the logistical and emotional strain of in-person retail, which often requires asking strangers for assistance—an experience she finds uncomfortable, intrusive, and incompatible with her desire for independence.

27.     While attempting to navigate the Sole Purpose Foot Butter product page, Ms. Russo encountered multiple accessibility barriers that prevented her from reviewing product information, selecting purchase options, or adding the item to her cart. A WAVE Accessibility Evaluation Report generated by Plaintiff's counsel for that page identified 13 errors, including 9 instances of "Linked image missing alternative text," a "Missing form label," "Multiple form labels," an "Empty heading," and a "Broken skip link," in addition to a contrast error for "Very low contrast" text and 51 additional alerts, including 29 instances of "Redundant link" and 5 instances of "Orphaned form label." These defects directly mirror the barriers Ms. Russo encountered when NVDA either failed to announce the product image and scent description or announced only redundant, unhelpful link text instead of the "Raspberry & Spearmint" scent designation and usage instructions displayed on the product packaging.

28.     While attempting to navigate the Supplelicious Face Serum product page, Ms. Russo encountered similar and, in several respects, more extensive accessibility barriers. A WAVE Accessibility Evaluation Report generated by Plaintiff's counsel for that page identified 15 errors, including 8 instances of "Linked image missing alternative text," a "Missing form label," 3 instances of "Empty form label," "Multiple form labels," an "Empty heading," and a "Broken skip link," together with 6 "Very low contrast" errors and 55 additional alerts, including 31 instances of "Redundant link" and 5 instances of "Orphaned form label." As a result of these defects, Ms. Russo's screen reader was unable to meaningfully convey the product's key ingredient information—including its 0.55% hyaluronic acid content, aloe vera, and Pro Vitamin B5 formulation—or permit her to select a purchase option (one-time purchase versus subscribe and save), add the item to her cart, or complete checkout.

29.     In an effort to compare Defendant's offerings to those of other retailers before completing her purchase, Ms. Russo also attempted to review Defendant's "Recommended Products" carousel and related product listings, including the Chillax Magnesium Body Cream, which is likewise the subject of a WAVE Accessibility Evaluation Report identifying 16 errors. That report similarly documents unlabeled interactive elements, missing alternative text on linked product thumbnails, and structural heading defects that would have obstructed Ms. Russo's ability to browse comparable product listings had she attempted to do so, further confirming that the barriers she encountered were not isolated to the two products at issue but reflect a systemic, site-wide pattern of inaccessibility.

30.     These barriers—including missing and duplicative alternative text, unlabeled and orphaned form controls, empty and skipped headings, broken skip links, and insufficient text contrast—rendered key content unreadable or unusable to screen-reader software, each in violation of WCAG 2.1 Level A and AA success criteria governing text alternatives (1.1.1), info and relationships (1.3.1), contrast (1.4.3), name, role, value (4.1.2), and bypass blocks (2.4.1).

31.     Because of these access barriers, Ms. Russo was unable to complete her intended purchases of the Sole Purpose Foot Butter and the Supplelicious Face Serum from Defendant's website on any of the three occasions she attempted to do so. She was likewise unable to locate a functional, accessible customer-service or accessibility-statement resource on the website through which she could request accommodation or assistance, compounding her exclusion from Defendant's goods and services.

32.     Despite the presence of these access barriers—which prevented Ms. Russo from accessing Defendant's website on all three occasions she attempted to do so—she nevertheless maintains a strong, ongoing desire to complete her intended purchases once the website is made

accessible. Ms. Russo conducted a diligent online search and product comparison and determined that Defendant's Sole Purpose Foot Butter and Supplelicious Face Serum remain her preferred selections based on their ingredient profiles, formulation characteristics, and pricing relative to comparable products offered by other retailers. Because Defendant's website is the exclusive channel through which she can obtain accurate product specifications, subscribe-and-save pricing, warranty and return information, and customer-support resources, Ms. Russo fully intends to return to www.mymsskincare.com as soon as the identified accessibility barriers are remediated so that she may independently evaluate the products, select her preferred purchase option, add the items to her cart, and complete checkout without assistance. Her intent to return is concrete, specific, and tied directly to her ongoing interest in purchasing Defendant's products once equal access is provided.

## CLASS ACTION ALLEGATIONS

33.    Ms. Russo remains highly motivated to return to www.mymsskincare.com once it is made accessible. Her interest is concrete, particularized, and ongoing: she still intends to purchase the Sole Purpose Foot Butter in Raspberry & Spearmint and the Supplelicious Face Serum for herself. Ms. Russo continues to prefer Defendant's handmade, natural, and cruelty-free product lines over comparable offerings from other skin care companies, and she requires full access to Defendant's product pages, cart, account, and customer-service features to complete the intended transactions.

34.    Ms. Russo has suffered a past injury—her inability to complete intended purchases of specific products due to documented accessibility barriers—and faces a real and immediate threat of future harm, given her stated intent to return once the website is accessible and the continuing presence of site-wide accessibility issues, as confirmed across multiple WAVE reports of Defendant's product pages. Her injuries are directly traceable to Defendant's failure to

maintain an accessible website and are redressable through injunctive relief. Accordingly, Ms. Russo has standing to bring this action under Title III of the ADA.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 et seq.)

35.	Plaintiff, SUSAN RUSSO, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

36.	Defendant's Website, www.mymsskincare.com, that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

37.	Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

38.	Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making

such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

39.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

40.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**<u>SECOND CAUSE OF ACTION</u>**
**(Violation of the New York State Human Rights Law)**

41.     Plaintiff SUSAN RUSSO, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

42.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

43.     Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.mymsskincare.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

44.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

45.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

46.     Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

47.     Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof

without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

48.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

49.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

50.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

51.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

52.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

53.    Plaintiff, SUSAN RUSSO, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

55.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

56.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

57.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological

conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

58.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

59.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

60.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

61.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id...

62.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

### FOURTH CAUSE OF ACTION
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

63.    Plaintiff, SUSAN RUSSO, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

65. Defendant is subject to NYCHRL because it owns and operates the Website www.mymsskincare.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

66. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

67. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

68.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

69.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

70.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

71.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

72.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

73.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

74.     Plaintiff, SUSAN RUSSO, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

75.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

76.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

Pre-judgment and post-judgment interest;

An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
July 31, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com